IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN STEPHEN THORNE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:15-CV-561-RP |
| UNION PACIFIC CORPORATION and UNION PACIFIC RAILROAD COMPANY, | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff John Stephen Thorne, (Dkts. 81, 84, 85),[1] and Defendants Union Pacific Corporation and Union Pacific Railroad Company, (Dkt. 86). Having reviewed the filings, the relevant law, and the factual record, the Court hereby issues the following Order.

## I. BACKGROUND

Plaintiff John Stephen Thorne ("Plaintiff") seeks a declaratory judgment establishing the number, class, and present dollar value of shares of stock he allegedly owns in Union Pacific Corporation ("UPC") or Union Pacific Railroad Company ("UPRR") (collectively, "Defendants"). (Am. Compl., Dkt. 12, at 13). Plaintiff also seeks a declaration of the Court regarding the cumulative dollar amounts of the dividends and interest earned on his shares, if any. (*Id.*).

Plaintiff's argument is predicated on his ownership of a stock certificate (the "Certificate") issued by the Southern Pacific Railroad Company ("SPRC") in 1859. (*Id.* ¶ 17). The Certificate, which bears the number 1656, issued to Mary Key 300 shares of $100 each. (*Id.* ¶¶ 17–18; Dkt. 12-1). SPRC subsequently underwent several sales, takeovers, and reorganizations. (Am. Compl., Dkt.

---

[1] Plaintiff filed three partial motions for summary judgment, as discussed in detail below.

12, ¶¶ 19–31; Stip. Facts, Dkt. 56, ¶¶ 19–49, 70–75). Plaintiff maintains that the 300 shares of SPRC stock at issue in this case survived each of those events. (Am. Compl., Dkt. 12, ¶¶ 19–32).

Plaintiff alleges that, at some time between 1874 and 1893, Ms. Key or her son "gifted, sold, or otherwise properly conveyed"[2] the Certificate to Lansing Stephen ("L.S.") Thorne, who was hired by Texas & Pacific Railway Company ("T&PRC")[3] as a brakeman and eventually became vice president and general manager of the company. (*Id.* ¶¶ 40–41).[4] Plaintiff alleges that the Certificate was thereafter gifted through generations of the Thorne family, culminating in a 2005 gift to Plaintiff (the great-great grandson of L.S. Thorne). (*Id.* ¶¶ 42–46). He further alleges that the shares have "evolved and grown into a valuable portion of equity" in UPRR or its holding company UPC.[5]

## II. LEGAL STANDARD

Summary judgment is appropriate under the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, it must also "support its

---

[2] Plaintiff's response to Defendants' Motion for Summary Judgment states that "evidence adduced during discovery has revealed that such conveyance was certainly a gift." (Pl.'s Resp., Dkt. 94, at 15).
[3] Texas & Pacific Railway Company ("TPRC") was incorporated by the United States Congress in 1871. (Stip. Facts, Dkt. 56, ¶ 36). SPRC was consolidated into TPRC in the same year. (*Id.* ¶ 37). The company's name was changed to Texas & Pacific Railway Company in 1872. (*Id.* ¶ 43).
[4] Plaintiff avers that, while "[i]t is not yet clear . . . precisely how the stock was conveyed . . . . [the conveyance] flowed out of the close friendship between the Keys and the Thornes." (Am. Compl., Dkt. 12, ¶ 41).
[5] T&PRC was merged into the Missouri Pacific Railroad Company ("MPRC") in 1976. (Stip. Facts, Dkt. 56, ¶ 70). MPRC was merged into UPRR in 1977. (*Id.* ¶¶ 72–75).

motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331.

Once the movant carries its initial burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by presenting evidence indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court views the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

On cross-motions for summary judgment, the court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005). "Cross-motions for summary judgment will not, in themselves, warrant the Court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law . . . ." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Each party may move for summary judgment using different legal theories that rely on different sets of material facts. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive. *See id.*

## III. PLAINTIFF'S PARTIAL MOTIONS FOR SUMMARY JUDGMENT[6]

Plaintiff filed three partial motions for summary judgment: one regarding Defendant's affirmative defenses, (Dkt. 81); one regarding the effect of an 1868 document pertaining to an event referred to herein as the "Hall Sale," (Dkt. 84); and one regarding the import of text found on the back of the Certificate, (Dkt. 85).

Plaintiff's first partial motion for summary judgment seeks to limit Defendants' affirmative defenses to his claims. (First Partial Mot. Summ. J., Dkt. 81). Specifically, Plaintiff asks the Court to restrict Defendants' arguments against the validity of Plaintiff's stock to a single argument regarding an 1868 sale of SPRC assets to a group of creditors led by R. B. Hall (the "Hall Sale"). (*Id.* at 1–2; Am. Compl., Dkt. 12, ¶¶ 26–27). Plaintiff argues that he is entitled to this relief because Defendants' "sole stated reason for rejecting Plaintiff's tender of [the Certificate] and request for transfer of Defendant[s'] stock certificates in Plaintiff's name has been their position that [the Hall Sale] destroyed the initial shareholder's equity interest." (*Id.* at 2). In so arguing, Plaintiff avers that Defendants' refusal to recognize the Certificate "constitutes an ongoing conversion" outside the scope of any permissible qualified refusal. (*Id.*).

Several intermediate Texas courts have found that the refusal to recognize rights in corporate stock or issue new stock certificates based on such rights constitutes conversion. *See, e.g.*, *First Nat'l Bank v. South Beaumont Land & Imp. Co.*, 60 Tex. Civ. App. 315, 128 S.W. 436, 437–39 (Tex. Civ. App. 1910, writ ref'd) (holding that a company's failure to recognize a stock certificate constituted conversion). A defense to conversion exists, however, when the person in possession of the demanded property engages in a "qualified refusal"—that is, when they refuse to surrender the

---

[6] The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, is "merely a procedural device for hearing declaratory judgments in federal court." *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc.*, 841 F.Supp. 623, 625 (S.D. Tex. 1996) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 330 U.S. 667, 671–72 (1950)). The Act "creates no independent basis for federal jurisdiction." *Id.* Here, the independent basis is established by diversity jurisdiction. (Am. Compl., Dkt. 12, ¶ 7). Texas law therefore provides the substantive rules for decision in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938).

property for a reasonable length of time while there is a reasonable doubt about the claimant's right to possession. *Stein v. Mauricio*, 580 S.W.2d 82, 83 (Tex. Civ. App.—San Antonio 1979, no writ). To successfully rely on qualified refusal, the person in possession of the demanded property must disclose all reasons for the refusal to the alleged owner of the property. *Id.* (citing 18 Am. Jur. 2d Conversion § 44 (1965); 89 C.J.S. Trover & Conversion § 59 (1955)) ("For a person in possession to rely on a qualified refusal, it is essential that the qualification be disclosed to the owner. The refusal must be stated distinctly, and all reasons for the refusal that are not mentioned at the time of refusal are waived and cannot be later raised.").

Here, Plaintiff alleges that Defendants "asserted only the 1868 Hall Sale as the basis for their qualified refusal," thereby waiving "all other purported reasons for such refusal." (First Partial Mot. Summ. J., Dkt. 81, at 7). Defendants make three arguments in response: first, that the affirmative defense of qualified refusal applies only to a claim for conversion, a claim Plaintiff has not brought; second, that qualified refusal is inapplicable here because Defendants contend they do not possess any of Plaintiff's property; and third, that there is a material fact dispute with respect to whether the Defendants' sole basis for rejecting Plaintiff's tender of the Certificate was that the Hall Sale destroyed the initial shareholder's equity interest. (Resp. First Partial Mot. Summ. J., Dkt. 91, at 1).

Because summary judgment is appropriate only when "the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), the Court will consider Defendants' third argument first. Defendants maintain that a dispute exists with respect to whether their sole basis for rejecting Plaintiff's tender of the Certificate and request for the equivalent amount in current stock is that the Hall Sale destroyed the initial shareholder's equity interest in the Certificate. Plaintiff's only evidence is (1) an August 3, 2011 email from UPC in-house counsel Timothy Dunning[7] to Plaintiff's former attorney,

---

[7] Mr. Dunning has since died. (Resp. First Partial Mot. Summ. J., Dkt. 91, at 5).

Ronald Bair, (Dunning–Bair Email, Dkt. 81-1, at 2)[8]; a portion of Plaintiff's own deposition testimony regarding that communication, (Thorne Dep., Dkt. 81-2, at 5)[9]; and "similar responses [by Defendants] to other inquiries over the past 150 years," (Dkt. 81-3). (First Partial Mot. Summ. J., Dkt. 81, at 2, 5). However, in the very email cited by Plaintiff, Mr. Dunning references not just the Hall Sale but also (1) other sales in 1860 and 1861, and (2) the 1872 acquisition of SPRC by TPRC. (Dunning–Bair Email, Dkt. 81-1, at 2). Additionally, an email between Plaintiff and Mr. Bair regarding a telephone conversation the latter had with Mr. Dunning notes that Mr. Dunning mentioned not only the Hall Sale but also a stock ledger from 1871 and the 1872 acquisition of SPRC by TPRC. (Bair–Plaintiff Email, Dkt. 86-40, at 2–3). These facts indicate, at the very least, that Defendants may have provided other bases for their refusal. Therefore, with respect to this issue, Plaintiff has failed to show that there is no genuine dispute as to any material fact. As a result, he is not entitled to judgment as a matter of law. Plaintiff's first partial motion for summary judgment, (Dkt. 81), is **DENIED**.

For the reasons stated below, *see infra* Parts IV–V, the Court concludes that Plaintiff's second and third partial motions for summary judgment, (Dkts. 84, 85), are moot. The Court therefore proceeds to an analysis of Defendants' motion.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue they are entitled to summary judgment on Plaintiff's claims because (1) Plaintiff cannot prove he is the true and rightful owner of the stock interest the Certificate once represented; (2) Plaintiff's claims are barred by the applicable statute of limitations; (3) Plaintiff's

---

[8] The email reads as follows: "In reviewing older correspondence in our files that dates to 1907, I have some more information regarding SPRC. SPRC was subjected to a Sheriff's sale in 1860 and was subjected to another compelled sale to satisfy debts in 1861. In 1868, SPRC was sold to its creditors, R.B. Hall & Associates, merchants from Louisville, Kentucky. The Company suffered another decree of foreclosure in October 1868 for $150,000, and the same shareholders purchased the company again. In 1872, Texas and Pacific acquired SPRC. This information likely can be confirmed in public records. As I indicated on the phone, our records indicate that records were filed in Harrison County, Texas." (Dunning–Bair Email, Dkt. 81-1, at 2).

[9] During the deposition, Plaintiff responded affirmatively to a question asking whether "the lawyer at UP told [him] the R.B. Hall purchase in 1868 cut off the interest." (Thorne Dep., Dkt. 81-2, at 5).

6

claims are barred by laches; (4) the stock in question was extinguished at least 147 years ago, if not before, by various corporate transactions, and (5) Plaintiff has no evidence to establish the declaratory judgments requested. (Defs.' Mot. Summ. J., Dkt. 86, at 1–7). Given the historical nature of Plaintiff's claims, the Court deems it prudent to begin its analysis with Defendant's second and third arguments: the statute of limitations and laches.

## A. Statute of Limitations

The parties in this matter dispute whether the statute of limitations has run. Both agree that the statute of limitations for a stockholder to assert his rights to recover stock and back dividends is generally four years, with claims accruing once a demand is made by the alleged stockholder and the corporation refuses the demand. *Cavitt v. Amsler*, 242 S.W. 246, 248 (Tex. Civ. App. Austin 1922, writ dism'd w.o.j.); *Yeaman v. Galveston*, 167 S.W. 710, 722–23 (Tex. 1914); (Defs.' Mot. Summ. J., Dkt. 86, at 20; Pl.'s Resp., Dkt. 94, at 12). But Defendants assert the Court should interpret that rule in light of other courts' more recent adoption of an "inquiry notice" standard. (Defs.' Mot. Summ. J., Dkt. 86, at 20). Courts using "inquiry notice" evaluate whether a demand by an alleged stockholder is barred by the applicable statute of limitations by considering when the alleged stockholder knew or should have known that her rights were being denied. *See, e.g.*, *Whitney v. Guys, Inc.*, 826 F.3d 1074 (8th Cir. 2016); *Egner v. Talbot's, Inc.*, 214 P.3d 272 (Alaska 2009). Defendants, however, have not identified any Texas courts—or courts within the Fifth Circuit—that have adopted this standard. Because this Court's jurisdiction over the instant case is grounded in diversity, the Court finds it would be inappropriate to apply the inquiry notice framework.

The four-year statute of limitations accrues once a demand is made by the alleged stockholder and the corporation refuses the demand. Here, Plaintiff sent Defendants a demand letter on June 30, 2011, (Dkt. 94-24); Defendants responded on August 3, 2011, (Dkt. 94-25). Because Plaintiff filed this suit on June 29, 2015, he maintains that his action is within the four-year

7

statute of limitations and thereby not barred. (Pl.'s Resp., Dkt. 94, at 18). But at a hearing held on the instant motions, Defendants argued that Plaintiff called Union Pacific in 2005 or 2007[10] to inquire about the value of his certificate. (Dkt. 109). According to Defendants, that call qualifies as a "demand" for purposes of the statute of limitations analysis, and Plaintiff's claims are time-barred. (*Id.*).

The Court is sympathetic to Defendants' argument. If strict adherence to the demand–rejection accrual framework required that the statute of limitations for a shareholder claim could not accrue until the shareholder sent (and the company in question refused) a formal demand letter— regardless of (1) any other knowledge the alleged stockholder might have, and (2) any other communications between the alleged stockholder and the corporation—a shareholder who knew for a certainty that her claims would be refused could still escape the statute of limitations in perpetuity by refraining from tendering a formal demand. Such a result would be antithetical to the principles underlying statutes of limitations in general and *Cavitt* specifically. That very case, for example, noted that if a corporation's "acts or words or both . . . clearly and unequivocally indicate to a stockholder that the corporation will not pay a dividend to him, this would be equivalent to a demand and refusal." *Cavitt*, 242 S.W. at 248.

Defendants, however, provide no evidence that their acts or words clearly and unequivocally indicated to Plaintiff that Union Pacific would refuse his demand. The evidence before the Court indicates only that Plaintiff spoke with a Union Pacific executive in 2005 or 2007 about the potential value of antique certificates:

> Q: How many times did you talk to this person?
> A: Just one.
> Q: What did you tell this person?
> A: I just asked if there were old certificates that had value.
> Q: I'm sorry. One more time?
> A: I asked if there were old certificates that had value. I don't recall the exact

---
[10] The exact date is unclear. (Thorne Dep., Dkt. 94-15, at 209, 220).

8

> > conversation, but I had asked him, you know, if people found certificates that had value and things.
> Q: What did he say?
> A: He said, no, a lot of those went through, you know, bankruptcies, a lot of the old railroads went through bankruptcies and things like that.
> Q: Did you talk to him about the certificate at issue in this lawsuit?
> A: I did not, not specifically.

(Dkt. 94-15, at 209, 220–21). Defendants have therefore not met their burden, and the Court cannot conclude that Plaintiff's claims are time-barred.[11]

*B. Laches*

Laches is "an equitable remedy that prevents asserting a claim due to the lapse of time." *In re Episcopal Sch. of Dallas, Inc.*, No. 5:17-493-CV, 2017 WL 4533800, at *10 (Tex. App.—Dallas Oct. 11, 2017) (no pet. h.). The Supreme Court of Texas has described the doctrine as one that applies to "antiquated" and "stale" demands involving a "long and unreasonable acquiescence in the assertion of adverse rights." *McMasters v. Mills*, 30 Tex. 591, 595–96 (Tex. 1868). The defense "embodies the principle that 'equity aids the vigilant and not those who slumber on their rights.'" *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 758 (Tex. App.—Dallas 2012, no pet.) (quoting *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 708 (5th Cir. 1994)). To invoke the doctrine, the movant must show both (1) an unreasonable delay by the opposing part in asserting its rights; and (2) the moving party's good faith and detrimental change in position because of the delay. *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (citing *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989)); *City of Dallas v. Ellis*, No. 5:16-348-CV, 2017 WL 655927, at *3 (Tex. App.—Dallas 2017, no pet.).

---

[11] Defendants also argue that Plaintiff's claims are time-barred because "his grandfather failed to timely bring suit after he was allegedly gifted the Certificate" and "Mary Key failed to timely bring suit to assert her rights to the Stock." (Defs.' Mot. Summ. J., Dkt. 86, at 22–23). But Defendants cite no case law supporting their contention that Plaintiff necessarily steps into the shoes of his predecessors-in-interest for purposes of a statute of limitations analysis; Defendants likewise failed to identify any such law at the hearing on the instant motions. Because the party moving for summary judgment bears the burden of "informing the district court of the basis for its motion," *Celotex*, 477 U.S. at 323, those arguments therefore fail.

9

Here, Defendants argue they are entitled to the protection of the doctrine because "[Plaintiff] and his family slumbered on their rights for more than 80 years." (Defs.' Mot. Summ. J., Dkt. 86, at 24). Plaintiff responds that (1) Defendants have failed to prove the required elements, and (2) the Court should not use laches to bar Plaintiff's claim because he filed his case within the statute of limitations. (Pl.'s Resp., Dkt. 94, at 21–22).

1. <u>Unreasonable Delay</u>

As noted above, a party seeking the protection of laches must demonstrate that the nonmoving party unreasonably delayed in asserting its rights. *In re Laibe*, 307 S.W.3d at 318. Plaintiff argues Defendants have not met this burden because they "cannot cite to any case or statute that would have required any of Plaintiff's predecessors to file suit with respect to [the Certificate]" and "Plaintiff presented [the Certificate] to Defendants within 4 to 6 years of receiving it." (Pl.'s Resp., Dkt. 94, at 22). This argument is in all meaningful respects identical to Plaintiff's argument that the Court should not use laches to bar Plaintiff's claim because he filed suit within the statute of limitations. The Court therefore discusses both arguments in tandem, though it does so with the understanding that the statute-of-limitations issue means Defendants face a higher burden than they otherwise would.

Generally, "laches does not bar a plaintiff's suit before the statute of limitations has run unless estoppel or 'extraordinary circumstances' are present." *Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 852 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) ("Laches should not bar an action on which limitations has not run unless allowing the action would work a grave injustice."); *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex. 1968).[12] However, the statute of limitations is only "one measure of

---

[12] While "[t]here is no bright-line rule defining . . . estoppel or extraordinary circumstances," Texas courts "have analyzed various fact situations to determine whether the circumstances pleaded justify the application of laches to bar a

whether a claim has become stale," and a court applying the doctrine of laches "is not bound by any statute of limitations." *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 912 (Tex. Civ. App.—Houston [1st Dist.] 1995, writ denied). Indeed, Texas courts have advised that "[f]or a court to deny the defense of laches in extraordinary circumstances, even though the applicable statute of limitations has not run, would work or could work grave injustice." *Warren Petroleum Co. v. Int'l Service Ins. Co.*, 727 S.W.2d 801, 805 (Tex. App.—Tyler 1987, writ ref'd n.r.e.).

Here, the Thorne family[13] discussed the Certificate, including the likelihood that it would have to be "taken to court" to be recognized, as early as 1933. (Thorne Dep., Dkt. 94-15, at 84–85). Plaintiff's grandfather actively investigated the value of the Certificate in 1951. (Ott Letter, Dkt. 86-9, at 1; Thorne Dep., Dkt. 94-15, at 228–29). And Plaintiff—despite (1) allegedly being gifted the certificate in 2005 or 2007, at which point he was told by his grandfather that the Certificate would have to be taken to court to be redeemed, (Thorne Dep., Dkt. 94-15, at 106–07); and (2) being told by an attorney that the certificate had no value in 2011, (Bair–Plaintiff Email, Dkt. 86-40, at 6)—did not bring this suit until 2015. These facts are analogous to those in several cases in which Texas courts concluded that plaintiffs had slumbered on their rights and defendants were protected by laches. *See, e.g.*, *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 639 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (applying laches following a 30-year delay in attempting to recover allegedly underpaid franchise fees); *City of Corpus Christi v. Nueces Cty. Water Control and Imp. Dist. No. 3*, 540 S.W.2d 357, 377 (Tex. App.—Corpus Christi 1976, writ ref'd n.r.e.) (applying laches when a city sought payment for the diversion of water after "st[anding] by for over 40 years"). One such case held that "a delay of over 30 years is unreasonable as a matter of law," *Houston Lighting*,

---

case when the statute of limitations has not run." *Brewer v. Nationsbank of Texas, N.A.*, 28 S.W.3d 801, 805 (Tex. App.—Corpus Christi 2000, no writ) (collecting cases).

[13] While Defendants did not cite law supporting their contention that Plaintiff steps into the shoes of his predecessors-in-interest for purposes of the statute of limitations, the same is not true with respect to laches. *See, e.g.*, *Wilson v. Meredith, Clegg & Hunt*, 268 S.W.2d 511, 517–18 (Tex. Civ. App.—Beaumont 1954, writ ref'd n.r.e.) (referencing the conduct of an individual "and his family," over a period of decades, while evaluating whether laches barred certain claims).

11

101 S.W.3d at 639, and another found "ample evidence . . . to bring the case within the doctrine of laches" based on the conduct, spanning 60 years, of an individual "and his family," *Wilson*, 268 S.W.2d at 517–18.

The Court concludes that Defendants have provided ample evidence demonstrating that Plaintiff and his family unreasonably delayed in asserting their rights. These facts—evidencing a decades-long delay in pursuing claims Plaintiff alleges are worth hundreds of millions of dollars—are exactly the "extraordinary circumstances" contemplated by those courts that have discussed when laches and statutes of limitations may diverge. Defendants have met their burden as to the first element of the laches defense.

   2. Good Faith and Detrimental Change in Position

"Unlike statutes of limitations, 'laches is not . . . a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.'" *Condom Sense*, 390 S.W.3d at 758 (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). A party seeking the doctrine's protection must therefore demonstrate its good faith and detrimental change in position because of the nonmoving party's delay. *In re Laibe*, 307 S.W.3d at 318. As one Texas court explained:

> To constitute a defense, the delay must have been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and thus make the doing of equity doubtful or impossible, as through loss, or obscuration of evidence of the transaction in issue, or there must have occurred in the meantime a change in conditions that would render it inequitable to enforce the right asserted, or, as commonly phrased, the delay must have worked injury, prejudice or disadvantage to defendant or others adversely interested, or plaintiff must have abandoned or waived his right, or acquiesced in the assertion or operation of the adverse right, or lost his own by estoppel; or sufficient time must have elapsed to create or justify a presumption against the existence or validity of plaintiff's right; or a presumption that if plaintiff was ever possessed of a right, it has been abandoned or waived or has been satisfied, or that in consequence of the delay the adverse party would be inequitably prejudiced by the enforcement of the right asserted.

*Brady v. Garrett*, 66 S.W.2d 502, 505 (Tex. Civ. App.—El Paso 1933, writ dism'd) (citation and quotation marks omitted). A moving party may demonstrate that it has suffered a

12

detrimental change in several ways. If the moving party meets that burden by showing that its "ability to defend against the claim or to ascertain the true facts is impaired, then plaintiff's claim should be barred." *De Benavides v. Warren*, 674 S.W.2d 353, 362 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.).

In the instant case, Defendants have identified a plethora of events that have impaired their ability to defend against Plaintiff's claim. Since 1933,[14] Mary Cunning Thorne—who would ostensibly have known of the circumstances surrounding the alleged conveyance of the Certificate from Mary Key to L.S. Thorne—has died. (Stip. Facts, Dkt. 56, ¶ 66). So too have both daughters of L.S. Thorne and Mary Cunning Thorne, also potential witnesses. And Plaintiff's grandfather—who allegedly gifted the Certificate to Plaintiff—was diagnosed with Alzheimer's in or before 2014. (Thorne Dep., Dkt. 94-15, at 25–26) (noting that the health of Plaintiff's grandparents has "degraded tremendously over the last couple of years").

These facts—some stipulated to by Plaintiff, and others provided by Plaintiff himself during his deposition—amount to far more than the "bare, conclusory allegations" Plaintiff claims. (Pl.'s Resp., Dkt. 94, at 23). There is no genuine dispute as to these facts. As a result of the unreasonable delay in bringing suit on the part of Plaintiff and his family, Defendant has lost access to nearly all potential witnesses. Defendants have therefore met their burden with respect to the second element. *Cf. Fazakerly v. Fazakerly*, 996 S.W.2d 260, 265 (Tex. App.—Eastland 1999, pet. denied) (finding that a daughter's claims regarding the validity of an antenuptial agreement were barred by laches where the claims were filed more than five years after the daughter entered into a settlement agreement with her stepmother and the

---

[14] While it would not be unreasonable for the Court to begin its analysis prior to this date, the relevant portion of Defendants' motion states that "[t]he Thorne family recognized the potential claim and the alleged right to the Stock before 1933." (Defs.' Mot. Summ. J., Dkt. 86, at 25).

13

stepmother, due to Alzheimer's disease, was not competent to testify at the time of trial); *De Benavides*, 674 S.W.2d at 362 (concluding that evidence that a "seven year delay in filing suit made it more difficult to retrieve the evidence . . . . [was] sufficient to support the findings of the trial court in determining the plaintiffs to be guilty of laches").

    3. <u>Laches as an Issue for Trial</u>

Plaintiffs finally contend that the Court should not grant Defendants summary judgment based on laches because "laches is an issue to be determined by the fact-finder at the time of trial." (Pl.'s Resp., Dkt. 94, at 21). Plaintiff is correct that laches is a "question of fact that is determined by considering all the circumstances in a particular case." (*Id.* (citing *In re Marriage of Stroud*, 376 S.W.3d 346, 357 (Tex. App.—Dallas 2012, pet. denied)). But neither of the cases Plaintiff cites stands for the proposition that laches is, by definition, an issue that must be decided at trial. Indeed, the cases clearly contemplate situations in which a court would determine the applicability of the doctrine at summary judgment. *See, e.g.*, *In re Marriage of Stroud*, 376 S.W.3d at 357 ("For the reasons described above as to the existence of fact issues regarding extrinsic fraud, we cannot conclude Martin met his burden of proving laches as a matter of law."). Here, the Court—relying primarily on the parties' stipulated facts and on testimony provided by Plaintiff himself during his deposition—has reviewed the factual record, applied the summary judgment standard, and determined that there is no genuine dispute as to any material fact. Defendants have shown, as a matter of law, both an unreasonable delay and harm resulting from the delay. The Court therefore finds that Plaintiff's claims are barred by laches.

14

## V. CONCLUSION

Because the Court finds that Plaintiff's claims are barred by laches, it is unnecessary to consider the other arguments raised in Defendants' motion.[15]

**IT IS ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 86), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's First Partial Motion for Summary Judgment, (Dkt. 81), is **DENIED** and that Plaintiff's Second and Third Partial Motions for Summary Judgment, (Dkts. 84, 85) are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that all pending deadlines and settings in this matter are **VACATED**.

**SIGNED** on November 21, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[15] The Court considered Plaintiff's First Partial Motion for Summary Judgment because it sought to limit Defendants' use of a wide range of affirmative defenses, potentially and presumably including laches. Plaintiff's Second and Third Partial Motions for Summary Judgment, however, involve arguments rendered moot by the Court's conclusion that Plaintiff's claims are barred by laches.